# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**TRAVIS WAYNE WOLVERTON,**

        **Plaintiff,**

**v.**                            CASE NO. 20-3012-SAC

**SHAWNEE COUNTY DEPARTMENT OF CORRECTIONS, et al.,**

        **Defendants.**

## NOTICE AND ORDER TO SHOW CAUSE

This matter is a civil rights action filed under 42 U.S.C. § 1983. Plaintiff proceeds pro se. On February 4, 2020, the Court directed the Shawnee County Department of Corrections to prepare a report pursuant to *Martinez v. Aaron*, 750 F.2d 317 (10th Cir. 1978). The report was submitted on March 11, 2020, and the Court enters the following order.

### The motion to proceed in forma pauperis

On January 14, 2020, the Court assessed an initial partial filing fee of $26.00. Plaintiff was granted an extension of time to submit the fee but has not done so. He now moves for a waiver of the initial partial filing fee. The Court has considered the record and will grant the motion for a waiver and the motion for leave to proceed in forma pauperis. Plaintiff remains obligated to pay the $350.00 filing fee, and the Court will order that a copy of this order be transmitted to the plaintiff's current custodian so that collection action may proceed.

### Nature of the Complaint

Plaintiff complains of interference with his rights under the First and Eighth Amendments, claiming that his job was threatened due

to his religion. He seeks damages.

The *Martinez* report states that plaintiff was held in the Shawnee County Department of Corrections Adult Detention Center (SNDOC) from September 22, 2019, until February 13, 2020, when he was transferred to the Kansas Department of Corrections. During his detention at the SNDOC, he participated in the inmate trusty program and was assigned to work as a "Close Observation Aide" (COA). Incident to that assignment, he signed an agreement on November 12, 2019, in which he agreed not to take unauthorized items to or from the unit where he was assigned, to move around the unit to ensure the wellbeing of inmates designated as Close Observation status, and to check frequently on each Close Observation inmate and document his observations at least every ten minutes. (Doc. 11, Ex. 3.)

On or about November 26, 2019, plaintiff brought a religious magazine and pamphlet to the unit where he performed his COA work. Staff searched plaintiff and found these materials; the magazine was returned to his living unit, but he was allowed to keep the pamphlet.

Plaintiff asked to hold a bible study while performing his COA duties, but staff rejected this request. Plaintiff alleges that he was verbally abused and threatened with the loss of his job if he brought a bible to work with him. Staff interviewed for the *Martinez* report stated plaintiff was told he could not take books, watch television, or participate in programming while performing his COA duties. They deny that he was told he could not have bible study or read his bible, only that he was told that he could not do so while he was working.

Policy at the SNDOC states that inmates shall have the opportunity to participate in religious observances deemed essential

in their faith, that inmates shall not form or meet in a group to have religious services if it threatens institutional security, and that the timing of religious services shall be only at times that do not conflict with the safe and orderly management of the facility. (Doc. 11, Ex. 7, SNDOC Policy IP-F-01.)

The *Martinez* report also addresses plaintiff's access to the law library at the SNDOC. It appears that plaintiff was allowed to use the law library after he requested access. However, between November 20, 2019, through January 13, 2020, the law library was understaffed. During that time, requests for legal materials were directed to a staff member who printed the materials and delivered them. During plaintiff's detention at the SNDOC, he submitted three requests to staff for materials or information and personally visited the law library on two occasions. (Doc. 11, Exs. 4 and 5.)

Finally, the *Martinez* report shows that plaintiff submitted multiple requests to staff but submitted only a single formal grievance form dated January 14, 2020, four days after this action was filed (Doc. 11, Ex. 4).

### Discussion

The Court is required to screen complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or any portion of it if a plaintiff presents claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). In cases filed by a plaintiff proceeding in forma pauperis, 28 U.S.C. § 1915(e)(2)(B) requires dismissal if the Court determine the action

is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Dismissal under this provision may occur at any time. 28 U.S.C. § 1915(e)(2).

Under the *Martinez* decision, the federal courts in the Tenth Circuit may direct prison officials to investigate the events underlying a prisoner's lawsuit and prepare a report. The report is designed "to develop a basis for determining whether a prisoner plaintiff has a possibly meritorious claim." *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). This procedure report "allow[s] the court to dig beneath the conclus[ory] allegations" to determine whether dismissal or judgment is warranted without trial. *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the investigation when the plaintiff has presented conflicting evidence." *Hall*, *id*. at 1111 (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).

The Court has considered the *Martinez* report and, for the reasons that follow, is considering the dismissal of this action. Plaintiff will be given the opportunity to respond to the *Martinez* report and directed to show cause why this matter should not be dismissed.

*Exhaustion of remedies*

This matter is governed by the Prison Litigation Reform Act ("PLRA"). The PLRA requires, in part, that a claim regarding prison conditions must be exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002). The exhaustion provision is codified in 42 U.S.C. § 1997e(a) and states that "No action shall be brought with respect to prison conditions

under 42 U.S.C. § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." The exhaustion requirement is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Thus, a prisoner must exhaust available remedies before the suit is filed. *See Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012)(affirming the dismissal of a claim where "contrary to the PLRA's exhaustion rules, [plaintiff] brought his federal suit before the prison had finished its review" of the incident in question).

Because plaintiff did not submit his formal grievance until four days after this matter was filed, he failed to properly comply with the PLRA's exhaustion requirement.

*First Amendment*

"Under the First…Amendment[], inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). "The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Id.* at 1219. If so, the prisoner must show that a prison regulation "substantially burdened [his] sincerely-held religious beliefs." *Id.*, (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).

Here, the Court accepts that plaintiff's religious beliefs are sincerely held. However, plaintiff has not presented any authority for his claim that he should be allowed to conduct a bible study while performing his work as a COA aide, a task that required him to move constantly through the housing unit to monitor and evaluate the

residents. His broad claim that he was denied the right to pursue his religion is simply too general. He does not argue that he was not allowed to observe his religion, only that he was prevented from doing so at a time and place where he had expressly agreed to perform work duties. Plaintiff has not met the burden of showing that he was denied a reasonable opportunity to pursue his religion, nor does his claim suggest that his free exercise was substantially burdened.

Finally, plaintiff's claim that he was subjected to verbal taunts does not state a claim for relief. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)("Verbal harassment or abuse of the sort alleged in this case (i.e. sheriff threatened to hang prisoner following prisoner's request to mail some legal correspondence] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.").

*Eighth Amendment*

Plaintiff makes a bare claim of a violation of his rights under the Eighth Amendment. That provision requires that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care and [] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1984)(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The complaint offers no supporting facts for this claim, nor does the *Martinez* report suggest that any support exists.

*Access to the Courts*

Plaintiff complains of limited access to the jail law library. Such a claim must be supported by allegations that show an inability to pursue a nonfrivolous legal claim occurred as a result of the lack of access to legal materials. *Lewis v. Casey*, 518 U.S. 343 351 (1996).

The United States Supreme Court's rulings on access to the court "rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). *See Petrick v. Maynard*, 11 F.3d 991, 995 (10th Cir. 1993)("a prisoner must do more than make a mere conclusory allegation of need for unspecified or unlimited materials"). Plaintiff has not plausibly alleged an injury arising from his limited access to the jail law library.

### Order to Show Cause

For the reasons set forth, the Court directs plaintiff to show cause why this matter should not be dismissed. Plaintiff is granted to and including **April 13, 2020,** to respond. The failure to file a timely response may result in the dismissal of this matter for failure to state a claim for relief without additional notice.

IT IS, THEREFORE, BY THE COURT ORDERED plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) and to waive the initial partial filing fee (Doc. 8) are granted. Collection action may proceed on the $350.00 filing fee under 28 U.S.C. §1915(b)(2), and the Clerk of the Court shall transmit a copy of this order to the finance office of the El Dorado Correctional Facility.

IT IS FURTHER ORDERED plaintiff is granted to and including **April 13, 2020,** to respond to the order to show cause.

**IT IS SO ORDERED.**

DATED:  This 13th day of March, 2020, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. District Judge